In the Matter of MATTHEW A. SIEGEL (Admitted as MATTHEW ALLEN SIEGEL), a Suspended Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE NINTH JUDICIAL DISTRICT, Petitioner.

Second Department, August 17, 1992

APPEARANCES OF COUNSEL

*Gary L. Casella,* White Plains *(Maryann Yanarella* of counsel), for petitioner.

*Matthew A. Siegel,* White Plains, respondent *pro se.*

## OPINION OF THE COURT

Per Curiam.

In this proceeding, the respondent was charged with 15 allegations of professional misconduct. The Special Referee sustained all charges, with the exception of Charges Six and Seven. The petitioner moves to confirm that portion of the report as sustained Charges One through Five and Eight through Fifteen and to disaffirm so much of the Special Referee's report as dismissed Charges Six and Seven. The respondent cross-moves to confirm the findings of the Special Referee, dismissing Charges Six and Seven, and to disaffirm the Special Referee's findings with respect to Charges One through Five and Eight through Fifteen. In the alternative, the respondent cross-moves to hold "further review by the court in abeyance pending its receipt of appropriate proposed findings of fact and * * * conclusions of law * * * upon which [the] respondent's 'rights and liability' depend under CPLR 4213 (b)".

Charge One alleged that the respondent engaged in conduct adversely reflecting on his fitness to practice law by failing to maintain a duly constituted escrow account and by commingling clients' and personal funds in his personal checking account at the Scarsdale National Bank. The respondent maintained an escrow account at that bank from approximately December 7, 1984, and continuing through January 10, 1989. The respondent testified under oath that he withdrew clients' funds from his escrow account by means of withdrawal slips, deposited these funds into his personal account or deposited clients' funds directly into his personal account for the purpose of disbursing these funds to the person entitled to them.

Charge Two alleged that the respondent failed to maintain required records for his escrow account, in violation of 22 NYCRR former 691.12 (b), (e) and (f) (now 22 NYCRR 1200.46), which require an attorney, *inter alia,* to maintain a record for all special accounts as well as records for all deposits and withdrawals from the accounts for a period of seven years

after the events which they record. The respondent so testified under oath at the petitioner's offices on August 28, 1989.

Charge Five alleged that the respondent improperly made withdrawals from his escrow accounts, in violation of 22 NYCRR former 691.12 (d) (now 22 NYCRR 1200.46), which requires that all special account withdrawals be made only by authorized intrastate or interstate bank transfer or by check payable to a named payee and not to cash. The respondent admitted under oath that he withdrew funds from his escrow account by means of withdrawal slips and from his IOLA account by checks payable to cash.

Charge Six alleged that the respondent is guilty of filing suit or taking other action when he knew or when it was obvious that such action would serve merely to harass or maliciously injure another and of knowingly advancing a claim that is unwarranted under existing law. Jesse Rothman was retained in or about 1980 to represent the respondent's mother, Doris Gurkin, in a divorce action. A stipulation of settlement was entered on the record before Justice Hickman regarding all of Mrs. Gurkin's claims for maintenance. The court recommended that Mr. Rothman accept a $25,000 fee, half to be paid by Mr. Gurkin and half by Mrs. Gurkin. On that date, the respondent, for the first time, requested that Mr. Rothman compensate him for legal services rendered. Mr. Rothman agreed to give Mrs. Gurkin a $4,000 allowance for such purpose towards her share of the legal fees.

Pursuant to the transcript of the stipulation of settlement, Mrs. Gurkin was to execute and deliver to Mr. Rothman by June 2, 1986, a noninterest bearing mortgage in the sum of $8,500, as her share of the legal fees due. Mr. Rothman was not present when the mortgage, dated May 21, 1986, and notarized by the respondent, was signed.

The respondent initiated an action captioned *Matthew A. Siegel and Doris Siegel v Jesse Rothman*. The action sounded in quasi contract, breach of contract, fraud, economic duress and coercion. A verified complaint was served upon Mr. Rothman with a schedule of services purportedly performed by the respondent, some of which predated his admission to practice on March 28, 1984. In the ad damnum clause, the respondent sought $35,000 in compensatory damages for the purported reasonable value of his legal services and $100,000 in punitive damages.

Charge Seven alleged that the respondent is guilty of charg-

ing a clearly excessive fee in demanding $35,000 in compensatory damages as the purported reasonable value of his legal services when Justice Hickman recommended a fee for Mr. Rothman of $25,000.

Charge Eight alleged that the respondent charged a clearly excessive fee with respect to Elizabeth DiBernardino's matrimonial action. Ms. DiBernardino paid the respondent a $250 consultation fee on May 6, 1988. Ms. DiBernardino signed a retainer agreement on June 2, 1988, and remitted a check in the sum of $2,500, which the respondent deposited into his escrow account. Pursuant to the retainer agreement, payment was to be at the rate of $125 per hour, and the $2,500 retainer was to be applied for services to be rendered.

On August 19, 1988, Mr. DiBernardino moved for temporary maintenance, child support, custody, exclusive possession of the marital residence, and counsel fees. The respondent drafted an attorney's affirmation in opposition and an affidavit in opposition signed by Ms. DiBernardino.

During a meeting with the respondent on *October 14, 1988,* Ms. DiBernardino inquired as to how much of the retainer paid to the respondent on June 2, 1988 had been exhausted. The respondent replied that *almost* all of it had been exhausted.

By letter dated *October 18, 1988,* the respondent billed Ms. DiBernardino $6,375 for an additional 51 hours of work and $31.01 for disbursements. By letter dated November 14, 1988, Ms. DiBernardino informed the respondent that he was not authorized to do any further work on her case and advised him that she had not yet received the itemized bill which she had requested over two weeks previously. Ms. DiBernardino subsequently received from the respondent an itemized account of hourly services performed. In that account, the respondent claimed to have spent 70⅚ hours at $125 per hour, for a total bill of $8,854.17. The respondent claimed a balance for legal services of $6,354.17 and $56.01 for disbursements.

Charge Nine alleged that the respondent is guilty of filing suit or taking other action when he knew or when it was obvious that such action would serve merely to harass or maliciously injure another. On or about March 20, 1989, the respondent caused a summons with notice to be served on his client, Ms. DiBernardino, for the purported reasonable value of legal services, compensatory, punitive and incidental damages of $106,410.18.

Charge Ten alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation and/or overreaching in connection with his representation of Mr. and Mrs. Adin Falkoff. The Falkoffs paid the respondent the sums of $250 and $927.08 by checks on or about April 20, 1988, and May 5, 1988. On May 18, 1988, the Falkoffs signed the retainer agreement and mailed it to the respondent with a check for $10,000 which, per the clear language of the retainer agreement, would be for legal services to be rendered.

The Falkoffs discharged the respondent on May 23, 1988. The respondent failed to return any portion of the $10,000 fee, despite instructions from the Falkoffs to tender a bill for his services and to return the balance.

In his answer to the complaint, the respondent indicates that he was away between May 20th and May 23, 1988. His answer does *not* set forth that he performed any services after May 18, 1988.

Charge Eleven alleged that the respondent failed to return an unearned fee, in violation of DR 2-110 (B) (4) and 2-110 (A) (3). Although he knew or should have known that a lawyer must withdraw upon being discharged by his client and shall promptly refund any part of a fee paid in advance which has not been earned, the respondent failed to return the $10,000 or any portion thereof to the Falkoffs after his discharge.

Charge Twelve alleged that the respondent failed to act competently in violation of Code of Professional Responsibility DR 6-101 (A) (1) and (2). Pursuant to a retainer agreement dated August 1, 1987, Susanne Basso (a/k/a Leventhal) paid the respondent an initial retainer of $2,125 with a further entitlement to a 20% contingency fee out of the recovery of any child support arrears. By the terms of an amended judgment of divorce of the Supreme Court, Queens County (Bambrick, J.), dated February 18, 1988, Mr. Leventhal was directed to pay $22,828.51 representing arrears of child support, counsel fees, and expenses. That judgment also directed Mr. Leventhal to pay all legal fees and expenses incurred by Ms. Basso in connection with any action to enforce support payments and to include the child as a dependent in any and all medical and dental insurance policies to which he is a subscriber through his employment.

Upon Mr. Leventhal's failure to comply with the terms of the divorce judgment, the respondent proceeded to enforce the judgment of divorce by restraining Mr. Leventhal's bank

accounts and serving an income execution on his employer. The income execution, dated June 22, 1988, lists the limitations upon deductions from wages set forth in CPLR 5241 (g). Notwithstanding these limitations, the respondent conceded, in his answer to Mr. Leventhal's complaint, that the garnishment he prepared withheld the full amount of current child support, in addition to 55% of Mr. Leventhal's biweekly pay. According to the respondent, he received advice from the Westchester County Department of Social Services, albeit erroneous, that the statutory percentage (here 55%) could be levied against a debtor spouse's salary to extinguish support arrears and, in addition, the full amount of current support could be deducted.

In executing upon Mr. Leventhal's salary, the respondent knew or should have known that he should not have handled this legal matter without associating himself with a lawyer who was competent to handle it and/or without preparation which was adequate under the circumstances.

Charge Thirteen alleged that the respondent engaged in conduct which adversely reflects on his fitness to practice law and which involves dishonesty, fraud, deceit, misrepresentation and/or overreaching by deducting legal fees and expenses from funds he held in escrow, by holding funds in escrow to cover a dental claim, and by conditioning the release of any moneys due Mr. Leventhal upon completion of the Grievance Committee's investigation, without any authority therefor.

By check No. 23767 issued by the Sheriff's office, New York County Division, and dated July 22, 1988, the respondent received $7,779.41 from Mr. Leventhal's bank account which had been executed on by the Sheriff's office. By letter dated August 14, 1988, the respondent replied to Mr. Leventhal's request for a listing of all moneys due under the current judgment by indicating that Mr. Leventhal was being charged, in addition to the outstanding balance, $62.93 in expenses and $770 additional attorney's fees (20% of $3,850 arrears for January 2, 1988, through July 22, 1988). The respondent testified at the Grievance Committee's offices on August 13, 1989, that he set his fee pursuant to the agreement with his client and that this was a litigation expense for enforcement.

On or about October 12, 1988, Mr. Leventhal requested the return of moneys he believed due him and enclosed a signed dental claim form for his daughter which the respondent had previously requested. By letter dated October 18, 1988, the

respondent informed Mr. Leventhal that, upon proper proof that he had forwarded the signed dental insurance form to his employer, no further garnishments would be made, other than for current support. The respondent also advised Mr. Leventhal that he was in breach of the separation agreement, incorporated in the judgment of divorce.

By letter dated November 5, 1988, the respondent apprised the New York City Department of Finance that he was earmarking for dental expenses the sums received through the income execution on Mr. Leventhal's salary. The respondent testified on August 13, 1989, that, in his opinion, the dental expenses constitute support. As attorney for the ex-wife, the respondent decided that moneys would be held in escrow for dental expenses and that Mr. Leventhal was in breach of the agreement to the extent that the respondent felt it had been rescinded.

The respondent determined that he was owed a further legal fee of $687.50 (2½ hours in December 1988 and 3 hours in January 1989) and deducted that amount as well.

In response to an inquiry from Mr. Leventhal's attorney, the respondent advised that any and all sums due shall be returned to Mr. Leventhal upon the complete investigation, as well as the continuation of support payments and the payment of the dental insurance claim.

Charge Fourteen alleged that the respondent has been guilty of charging a clearly excessive fee and/or engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation and overreaching. In or about July 1989, the respondent and Seth Grae were retained by Douglas Gian and Harold Lichtman, the plaintiffs in an action against East Hartsdale Avenue Owners' Corp. The action involved replacement windows in apartments owned by Gian and Lichtman.

The respondent drafted a retainer agreement, dated July 11, 1989, calling for a $3,000 nonrefundable retainer fee "for legal services rendered and to be rendered". Pursuant to the retainer agreement, the nonrefundable fee of $3,000 and the $125 hourly rate "shall constitute and be understood to be the fair and reasonable value and prospective estimate of our legal services". Grae withdrew from the case in or about October 1989.

On or about November 2, 1989, the plaintiffs and the respondent met for the purpose of reviewing the proposed amended complaint. At that time, the respondent presented

the plaintiffs with an itemized bill of $5,968.75 over and above the $3,000 retainer. The respondent claimed to have spent 47¾ hours in research, preparation, and drafting of the proposed amended complaint. The respondent simultaneously volunteered to reduce the aforesaid bill to $4,000, a sum which he felt was more reasonable, under the circumstances.

The respondent thereafter sought to withdraw as counsel, to fix his fee for services rendered, and to require the plaintiffs to pay him before he was required to deliver all papers and pleadings.

By order dated February 6, 1990, and amended order dated February 21, 1990, the Honorable W. Denis Donovan determined that the quantum meruit value of the work performed by the respondent was equal to 20 hours or the retainer amount of $3,000.

After reviewing all of the evidence adduced, we find that the Special Referee properly sustained Charges One, Two, Five, Eight, Nine, Ten, Eleven, Twelve, Thirteen and Fourteen and improperly failed to sustain Charges Six and Seven. With respect to Charges Six and Seven, it is clear from the respondent's testimony that he was paid via the $4,000 credit afforded his mother against her $12,500 assessment for counsel fees. The respondent may not thereafter decide that the amount paid him was insufficient and bring an action for $35,000, along with a claim for punitive damages of $100,000. For the respondent to claim that he is entitled to a $35,000 fee when Mr. Rothman's fee was only $25,000, does not comport with the oral agreement to which the respondent testified. Moreover, the claim for punitive damages is without any basis whatsoever. Notwithstanding the pendency of the action commenced by the respondent which underlies Charges Six and Seven, we find that those two charges have been sustained by the evidence.

Accordingly, the petitioner's motion is granted to the following extent: the report of the Special Referee is confirmed to the extent that Charges One, Two, Five, Eight, Nine, Ten, Eleven, Twelve, Thirteen, and Fourteen are sustained and the motion to disaffirm so much of the Special Referee's report as dismissed Charges Six and Seven is granted. The respondent's cross motion to (a) confirm the Special Referee's report to the extent it dismissed Charges Six and Seven is denied, and (b) to disaffirm the findings of the Special Referee is granted to the extent that Charges Three, Four, and Fifteen are dismissed. The motion and cross motion are denied in all other respects.

In determining the appropriate measure of discipline to impose, we have taken into consideration the posthearing assessment of the respondent by the Special Referee and the mitigating circumstances offered by the respondent, including his lack of legal experience. The respondent is, nevertheless, guilty of serious professional misconduct which warrants his disbarment.

MANGANO, P. J., THOMPSON, BRACKEN, SULLIVAN and HARWOOD, JJ., concur.

Ordered that the petitioner's motion to (a) confirm the report of the Special Referee is granted to the extent that Charges One, Two, Five, Eight, Nine, Ten, Eleven, Twelve, Thirteen and Fourteen are sustained, and (b) disaffirm the report of the Special Referee to the extent that it failed to sustain Charges Six and Seven is granted, and the motion, is otherwise denied; and it is further,

Ordered that that branch of the respondent's cross motion which was to confirm the Special Referee's report with respect to the dismissal of Charges Six and Seven is denied and that branch of his cross motion which was to disaffirm the Special Referee's report is granted to the extent that Charges Three, Four and Fifteen are dismissed, and the cross motion is otherwise denied; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent Matthew A. Siegel is disbarred and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent shall continue to comply with this court's rules governing the conduct of disbarred, suspended and resigned attorneys (22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, the respondent Matthew A. Siegel is commanded to continue to desist and refrain (1) from practicing law in any form, either as principal or as agent, clerk or employee of another, (2) from appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission or other public authority, (3) from giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) from holding himself out in any way as an attorney and counselor-at-law.